IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| v. | § | Cr. No. C-05-105 (1) |
| | § | C.A. No. C-06-435 |
| NELSON ANTONIO SORTO, | § | |
| | § | |
| Defendant-Movant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE AND
ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Nelson Antonio Sorto's ("Sorto") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 33).[1]  Also before the Court is the government's response, which moves for summary judgment against Sorto's motion. (D.E. 35.)  Sorto filed a response to the summary judgment motion, which the Court has also considered.  (D.E. 36.)  For the reasons set forth below, the Court GRANTS the government's motion for summary judgment (D.E. 35) and DENIES Sorto's § 2255 motion (D.E. 33). Additionally, the Court DENIES Sorto a Certificate of Appealability.

**I.  JURISDICTION**

The Court has jurisdiction over this matter under 28 U.S.C. § 2255.

**II.  BACKGROUND**

A.      **Facts of the Offense**[2]

On February 6, 2005, Sorto was one in a group of twenty-seven illegal aliens apprehended by

---

[1]  Docket entry references are to the criminal case.

[2]  These facts are taken from Sorto's Presentence Investigation Report ("PSR") at ¶¶ 4-5.

U.S. Border Patrol.  The group was being transported North in two vehicles.  When law enforcement officials attempted to pull the vehicles over near Alice, Texas, the drivers and passengers attempted to run.  Sorto was believed to be a passenger.

Sorto is a citizen of El Salvador by birth.  Additionally, a records check revealed that Sorto was arrested on August 1, 1992 by the Los Angeles Police Department for murder.  On December 27, 1993, Sorto was convicted of one count of voluntary manslaughter and sentenced to six years custody.  On April 16, 1996, Sorto was ordered deported in Phoenix, Arizona, and he was physically removed on April 23, 1996, through Los Angeles, California.

**B.**     **Criminal Proceedings**

On February 17, 2005, Sorto was charged in a single-count indictment with being illegally present in the United States, after having been previously denied admission, excluded, deported and removed, in violation of 8 U.S.C. §§ 1326(a) and 1326(b).  (D.E. 8.)  Sorto was represented throughout the underlying proceedings by Assistant Federal Public Defender Jose Gonzalez-Falla. On March 23, 2005, Sorto pleaded guilty to the indictment. (D.E. 13.)  There was no written plea agreement.

Pursuant to the Court's instructions, the probation department prepared a Presentence Investigation Report ("PSR").  The PSR calculated Sorto's base offense level to be an 8.  (PSR at ¶ 10.)  It increased his offense level by sixteen levels pursuant to U.S.S.G. § 2L1.1(b)(1)(A)(ii) due to his prior conviction for voluntary manslaughter. (PSR at ¶ 11.)  It then gave him a three-level credit for acceptance of responsibility, resulting in a total offense level of 21. (PSR at ¶ 10-21.)  His only conviction resulted in a total of 3 criminal history points, and he had no other points, giving him a criminal history category of II. (PSR at ¶¶ 22-24.)  The resulting advisory guideline range for a term of imprisonment was 41 to 51 months, and the statutory maximum for the offense was twenty years.

(PSR at ¶¶ 37-38.)

Sorto, through counsel Gonzalez-Falla, filed written objections to the PSR. (D.E. 15.) Specifically, he objected to the statutory maximum being twenty years, and argued that any sentence beyond two years, and any supervised release term beyond one year, would be unconstitutional. Although Sorto's objection acknowledged that his argument was foreclosed by the Supreme Court's decision in Almendarez-Torres v. United States, 523 U.S. 224 (1998), he stated that he made the objection to preserve the issue for appeal. (D.E. 15 at 3.)

In addition to the objections to the PSR, Sorto's counsel also filed a Sentencing Memorandum. (D.E. 18.) This seven-page document contained a number of arguments as to why the Court should impose a sentence below the advisory guideline range. In particular, Sorto argued that, under United States v. Booker, 543 U.S. 220 (2005), the Court must consider not only the advisory guideline range, but also the factors set forth in § 3553(a) when imposing a sentence. (D.E. 18 at 1-3.) He argued that, in his case, those factors suggest that a sentence lower than 41 months should be imposed. (Id. at 3.) He pointed to the nature and circumstances of the voluntary manslaughter offense, and contended that the conviction played an unduly important role in characterizing the seriousness of the instant offense. (Id. at 3-4.) He also pointed to the history and characteristics of the defendant as warranting a lower sentence. (Id. at 5.)

The Sentencing Memorandum also posited that a lower sentence was needed to avoid unwarranted disparities with similar records who have been found guilty of similar conduct. (Id. at 5.) As part of this argument, counsel noted that if Sorto had been prosecuted in either the McAllen or Brownsville Division of the Southern District of Texas, he would have qualified for a 2-level "fast-track" departure, reducing his advisory sentencing range from 41-51 months down to 33-41 months. (Id. at 5-6.) In his final argument, counsel contended that Sorto's sole conviction resulted in an

3

overstated criminal history, because it both added 3 criminal history points to his guidelines and added 16 levels to his offense level. (Id. at 6.) For all of these reasons, counsel argued that Sorto should receive a sentence below the guideline range of 41 to 51 months. (Id. at 7.)

Sentencing occurred on June 15, 2005. (D.E. 19; see generally D.E. 26, Sentencing Transcript ("S. Tr.").) Defense counsel reiterated the arguments made in the objections to the PSR and in the sentencing memorandum, and asked for a two-year sentence for Sorto. (S. Tr. at 6-7, 9-18, 30.) The government recommended a 51-month sentence. (S. Tr. at 30.) This Court found that the factors in § 3553(a) were properly reflected in the calculation of the advisory guidelines. (S. Tr. at 32.) It sentenced Sorto to 41 months in the custody of the Bureau of Prisons, to be followed by a three-year supervised release term, and imposed a $100 special assessment. (S. Tr. at 32; D.E. 22.) Judgment was entered on June 20, 2005. (D.E. 22.)

Sorto timely appealed. The sole issue raised on appeal was the same argument raised in his objection to the PSI, i.e., that the "felony" and "aggravated felony" provisions of 8 U.S.C. § 1326(b)(1) and (2) are unconstitutional and that Almendarez-Torres, supra, which held to the contrary, was incorrectly decided. (D.E. 31 at 1.) The Fifth Circuit affirmed in a per curiam opinion issued April 12, 2006. (D.E. 31.) Sorto did not file a petition for writ of certiorari. (See generally docket sheet in United States v. Sorto, No. 05-40920 (5th Cir.).) The Clerk received Sorto's § 2255 motion on September 29, 2006. (D.E. 33.) It is timely.

### III. MOVANT'S ALLEGATIONS

In his motion, Sorto claims that "the court was willing to impose a reduced sentence, but for counsel's inadequate preparation for the sentencing phase." (D.E. 33 at 1.) He lists the following four

"issues," although all challenge the conduct of his counsel at sentencing:[3]

> (a) Whether Counsel's inadequate preparation for petitioner's case constituted Ineffective Assistance of Counsel.
>
> (b). Whether counsel's Inadequate knowledge of the Provisions of the U.S.S.G., constituted deficient performance, thus ineffectiveness of counsel.
>
> (c). Whether counsel failure to seek available downward departure avenues, rendered his performance deficient to constitute ineffectiveness.
>
> (d). Whether counsel line of argument during sentencing created a conflict of interest, wherefore counsel acted like a prosecutor.

(D.E. 33 at 3.)  In his reply, Sorto adds the contention that the foregoing cumulative errors of counsel resulted in his being deprived of effective assistance. (D.E. 36 at 4.)

As discussed in detail herein, Sorto is not entitled to relief as to any of his claims.

## IV.  DISCUSSION

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge may

---

[3]  The list is exactly as it appears in Sorto's motion, including the original punctuation, capitalization, etc., without correction.

not do service for an appeal." <u>United States v. Frady</u>, 456 U.S. 152, 165 (1982).

**B.**     **Ineffective Assistance of Counsel**

All of Sorto's claims are ineffective assistance of counsel claims.  Such claims are properly analyzed under the two-prong analysis set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>United States v. Willis</u>, 273 F.3d 592, 598 (5th Cir. 2001).  To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial.  <u>Id</u>.  This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence.  <u>United States v. Dovalina</u>, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other.  <u>Armstead v. Scott</u>, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"), <u>cert.</u> <u>denied</u>, 514 U.S. 1071 (1995); <u>Carter v. Johnson</u>, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

In order for Sorto to show that he suffered prejudice as a result of counsel's ineffectiveness at sentencing, he must show that there is a reasonable probability that, but for counsel's alleged errors, the sentencing would have been different.  <u>See</u> <u>United States v. Phillips</u>, 210 F.3d 345, 350 (5th Cir. 2000).  This requires him to show a reasonable probability that he would have received a lesser sentence.  <u>United States v. Grammas</u>, 376 F.3d 433, 438-39 (5th Cir. 2004). As discussed herein, there is no evidence to support any contention that, but for his counsel's alleged errors, Sorto would have received a lesser sentence.

### 1.    Failure to Investigate and Prepare for Sentencing

Sorto first alleges that his counsel was deficient because he did not adequately prepare for sentencing.   In particular, he claims that his counsel should have researched and presented cases showing sentences between 24 and 31 months for charges of illegal reentry, and cases in which a defendant successfully objected to the sixteen level enhancement.  He further claims that counsel should have gathered and presented "mitigating evidences" from his employment records, proffered co-workers as character witnesses, and shown that he had paid taxes and supported his family.  (D.E. 33 at 4-8.)

Notably, the information that Sorto faults his counsel for not providing to the Court was, in fact, presented to the Court by counsel.  (See D.E. 18 at 5 (Sentencing Memorandum noting that family and friends describe Mr. Soto as "a responsible, respectful, and hardworking father and husband," describing his employment history and noting that he has provided for his wife and four children since his initial deportation); S. Tr. at 17 (describing Mr. Sorto and referencing his confirmed work history and the fact that he is a "caring and dedicated father").)  Moreover, the PSR set forth the information that he is saying his counsel failed to bring before the Court.  (See PSR at  ¶¶ 27, 33-35.)

Likewise, the fact that, in other cases, defendants had received sentences between 24 and 31 months for illegal entry was known to the Court. The Court was also aware of the advisory nature of the guidelines at the time of sentencing.  Because all of this information was before the Court, Sorto cannot establish prejudice.  That is, he cannot show that he would have received a lesser sentence had his counsel done something more to emphasize these facts.  Accordingly, this claim fails.

Additionally, throughout his claim that his counsel was ill-prepared for sentencing, Sorto makes repeated references to the fact that counsel was also representing two other defendants in unrelated cases while representing Sorto.  Sorto contends that, as a result, his counsel was in a

7

"'duplicitous' position" and that his commitment to his other clients resulted in him neglecting Sorto's case. (D.E. 33 at 7.) His contentions are meritless. As an initial matter, the Assistant Federal Public Defender, like other defense attorneys appearing frequently before this Court, have caseloads of more than one client. They also regularly have more than one rearraignment or sentencing on any given day. Indeed, it would be hard to imagine an attorney supporting himself financially on a caseload of one client at a time, as Sorto seems to suggest should be the norm.

Moreover, Sorto was ably represented in this case, and especially at sentencing. Although the Court ultimately disagreed with his arguments at sentencing, Gonzalez-Falla filed objections and a well-drafted sentencing memorandum, and argued cogently to the Court for a sentence below the advisory guideline range. There is simply no evidence of deficiency, in addition to Sorto being unable to show prejudice.

For all of these reasons, Sorto's first claim of ineffective assistance fails.

### 2.    Counsel's Allegedly Inadequate Knowledge of the Sentencing Guidelines

Sorto's second claim is closely related to his first. Sorto alleges that his attorney failed to give the Court reasons to impose a sentence below the guideline sentence, and that he should have informed the Court that Sorto had spent six years in the United States without committing a crime, that he had maintained a steady job, paid his taxes and supported his family, and that his sole criminal activity was the manslaughter conviction, which was an act of self-defense.

As with Sorto's first claim, the Court finds no support in his record for Sorto's claim that his counsel's knowledge of the sentencing guidelines was inadequate or that he failed to present these facts to the Court. Indeed, contrary to Sorto's assertions, all of these facts were known to the Court and argued to the Court by counsel. (See D.E. 18; see generally S. Tr..) The Court nonetheless chose to impose a sentence within the guideline range. Accordingly, Sorto has not shown either deficiency

or prejudice and his second claim fails.

**3.     Counsel's Alleged Failure to Seek a Downward Departure Pursuant to the "Fast Track" Program**

In his third claim, Sorto alleges that his counsel was constitutionally ineffective because he failed to obtain an agreement from the government for a "fast track" offer or to obtain a "fast track" departure from the Court. (D.E. 33 at 11-15.)  In his reply, he faults his counsel with being unable to provide the Court with an "objective explanation" of the "fast track" program.  (D.E. 36 at 5.)

The Court presumes that Sorto's reference to the "fast track" refers to programs that allow certain defendants to plead guilty and to waive certain rights very early in the criminal process, in exchange for a motion for downward departure pursuant to U.S.S.G. § 5K3.1.  The fast-track programs were first approved by Congress in 2003 as part of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act ("PROTECT ACT").  Section 401(m)(2)(B) of the PROTECT Act instructed the United States Sentencing Commission to create a policy statement authorizing a downward departure "pursuant to an early disposition program authorized by the Attorney General."

Consequently, the Sentencing Commission adopted U.S.S.G. § 5K3.1, which provides that, "[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides."  U.S.S.G. § 5K3.1.

Attorney General Ashcroft formally created the fast-track program through a memorandum dated September 22, 2003 and authorized such programs in certain districts.  According to Ashcroft, the programs "are based on the premise that a defendant who promptly agrees to participate in such a program has saved the government significant and scarce resources that can be used in prosecuting

9

other defendants and has demonstrated an acceptance of responsibility above and beyond what is already taken into account by the adjustments contained in U.S.S.G. § 3E1.1."  September 22, 2003 Memorandum from Attorney General Ashcroft on Department Principles for Implementing an Expedited Disposition of Fast-Track Prosecution Program to All United States Attorneys, reprinted in 16 Fed. Sent. R. 134 (2003) ("Ashcroft Memo").  Once authorization has been granted to a specific district, the district may implement the program in a manner deemed appropriate by its United States Attorney, subject to certain restrictions.  Id.

The United States Attorney for the Southern District of Texas has received approval to implement such a program in this District.  See United States v. Mejia, 461 F.3d 158, 161 (2d Cir. 2006) (noting that 13 of 94 federal districts have "early disposition" or "fast-track" programs for illegal reentry cases, including the Southern District of Texas).[4]  Moreover, according to Sorto's sentencing counsel and the lengthy discussion on the record at sentencing, the United States Attorney offered the program in other divisions within this District for illegal reentry cases at the time of Sorto's indictment and sentencing for illegal reentry cases.  (See D.E. 18 at 5-6; S. Tr. at 18-30.)

Significantly, however, the downward departure allowed by U.S.S.G. § 5K3.1 requires a motion *by the government* and no such motion was ever made in this case.  Sorto seems to claim that his counsel should have required the government to make such a motion, but this argument is untenable.  As stated by the prosecutor at sentencing, that offer was not available to Sorto because the U.S.

---

[4]  See also October 29, 2004 Memorandum from James B. Comey, Deputy Att'y Gen., to U.S. Attorneys on Authorization of Early Disposition Programs (2004), available at http://sentencing.typepad.com/sentencing_law_and_policy/files/61005_govt_opposition_to_sg_variance_due_to_fasttrack.pdf (labeled as "Government's Exhibit 2") (giving continued authorization for fast-track program in the Southern District of Texas for illegal reentry cases, transporting or harboring of illegal alien cases, and, in the Laredo Division, for drug cases arising along the border).

Attorney of this District did not offer the fast track program in the Corpus Christi Division.[5]  (S. Tr. at 19.)  Accordingly, Sorto could not have received the benefit of the fast track program.

Knowing this, counsel made the best argument he could, which was that the availability of the fast-track program in other divisions within the Southern District and within other districts results in a disparity in sentencing that is a proper ground for giving a sentence below the advisory sentencing range.[6]  This Court disagreed with that reasoning in this case, because it found that Sorto's advisory sentencing range adequately took into account the factors in § 3553(a).

Sorto cannot show prejudice, then, because he has not shown that his sentence would have been different had his counsel argued more forcefully for the application of the fast track departure. Quite simply, he was not entitled to participation in the fast track program by virtue of being indicted in the Corpus Christi Division and because of the manner in which the program is being implemented by the United States Attorney within the Southern District.  Moreover, the Court was aware of the discrepancy and held that it did not warrant a sentence below the advisory guideline range in this case. So, he has failed to show prejudice.

Additionally, Sorto cannot show that his attorney's failure to obtain a "fast track" benefit for Sorto, or to explain the program more adequately to the Court, fell below an "objective standard of

---

[5]  The Court reaches no conclusions herein on the propriety or authority of the United States Attorney for this District to limit the program's availability only to certain divisions of this Court, where the Attorney General has apparently approved the program for the entire district.

[6]  This same argument has been rejected by various federal appellate courts. See, e.g., United States v. Mejia, 461 F.3d 158, 162-164 (2d Cir. 2006) (rejecting argument on direct appeal that defendant's sentence was unreasonable because the defendant would have been treated more favorably in a jurisdiction with a fast-track program); id. at 164 (citing to cases from the First, Fourth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits and stating "[w]e join other circuits in holding that a district court's refusal to adjust a sentence to compensate for the absence of a fast-track program does not make a sentence unreasonable"). See also United States v. Melendez-Torres, 420 F.3d 45, 52-53 (1st Cir. 2005) (rejecting equal protection challenge to absence of "fast track" program in district of conviction).

reasonableness," so as to establish the deficiency prong of <u>Strickland</u>.  466 U.S. at 688.  As the Fifth

Circuit has recently reaffirmed:

> Judicial scrutiny of counsel's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." ... There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."

<u>United States v. Harris</u>, 408 F.3d 186, 189 (5th Cir. 2005) (citations omitted).  In this case, that

deference due counsel's performance precludes relief for Sorto, for he has done nothing to overcome

the "strong presumption" that his counsel's performance was reasonable.  Counsel researched the fast

track program and spoke to attorneys practicing in other divisions about it.  Even though the program

was unavailable to Sorto because of the government's policy in implementing the program, counsel

made a cogent argument that he should be receive a reduction in sentence because of its availability

elsewhere.  Sorto has not shown that counsel was deficient.

**4.      Counsel's Alleged "Conflict of Interest"**

Sorto does not elaborate on his fourth "issue," <u>i.e.</u>, whether his counsel had a conflict of

interest and acted like a prosecutor during sentencing.  Having reviewed the entire sentencing

transcript, however, the Court finds no merit in this contention.  As noted, the Court finds that defense

counsel ably represented his client before this Court, and represented his client's interests with no

apparent conflict.  Although Sorto takes portions of the sentencing transcript out of context in an

attempt to show that his counsel made statements unfavorable to him, he has not shown a conflict of

interest or deficiency on the part of his counsel.  This claim of ineffective assistance of counsel fails.

5.      **Cumulative Errors of Counsel**

In his reply, Sorto reiterates many of the arguments raised in his earlier motion.  He also states that he "does not depend on any one single error by counsel," but that it is "the cumulative effect with its prejudicial consequences that is at issue here."  (D.E. 36 at 4.)

As noted above, the Court has not found that Sorto was denied the effective assistance of counsel as to any of the individual actions by counsel that Sorto challenges.   Accordingly, "cumulative" error is not grounds for relief.  United States v. Hall, 455 F.3d 508, 520-21 (5th Cir. 2006) ("Our clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions.") (citing Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir. 2000) and Yohey v. Collins, 985 F.2d 222, 229 (5th Cir. 1993)).

For the foregoing reasons, the Court finds that Sorto is not entitled to relief on any of his claims.  Thus, the government's motion for summary judgment (D.E. 35) is GRANTED, and Sorto's § 2255 motion (D.E. 33) is DENIED.

C.      **Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Sorto has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

The Court concludes that reasonable jurists could not debate the denial of Sorto's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 123 S. Ct. at 1034 (citing Slack, 529 U.S. at 484). Accordingly, Sorto is not entitled to a COA as to his claims.

## V. CONCLUSION

For the aforementioned reasons, the government's motion for summary judgment (D.E. 35) is GRANTED, and Sorto's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 33) is DENIED. Additionally, Sorto is DENIED a Certificate of Appealability.

ORDERED this 5th day of February, 2007.

Janis Graham Jack
United States District Judge

14